IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY CULVER, EJ-1493,  )  | |
|     Petitioner  ) | |
| ) | |
|     v.  ) | Civil Action No.   05-215 |
| ) | |
| FREDERIC ROSEMEYER, et al.,  ) | |
|     Respondents.  ) | |

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Henry Culver for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal habeas corpus issue.

II. Report:

Henry Culver has presented a petition for a writ of habeas corpus. In his petition, Culver seeks to challenge his conviction of aggravated assault, assault by a prisoner and simple assault at No. 199516950 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 11, 1996.

The instant petition was received on February 18, 2005 . However, because this petition was not the first federal petition in which Culver challenged this conviction, the matter was transferred to the United States Court of Appeals pursuant to 28 U.S.C. 1631 as a second or successive petition. In an Order entered on May 17, 2005, the Court of Appeals determined that the petitioner had made a *prima facie* demonstration of possible entitlement to relief and

remanded the matter for further consideration by this court "including timeliness, exhaustion, procedural default, cause and prejudice, and actual innocence."

Culver is presently incarcerated serving an eight to twenty year sentence imposed following his conviction, by a jury, of aggravated assault and assault by a prisoner at No. CC 9516950, in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 11, 1996.[1]

An appeal was taken to the Superior Court which affirmed the judgment of sentence on August 28, 1998[2], and leave to appeal was denied by the Pennsylvania Supreme Court on January 6, 1999.[3]

A post-conviction petition was filed in the Court of Common Pleas on August 19, 1999.[4] That petition was dismissed on October 24, 2000.[5] An appeal was taken to the Superior Court, and the denial of post-conviction relief was affirmed on December 28, 2001, and a petition for allowance of appeal to the Pennsylvania Supreme Court was not filed.[6]

Culver subsequently filed a second post-conviction petition which was dismissed on November 25, 2003.[7] An appeal was taken to the Superior Court in which the issues presented were:

---

[1] See: Petition at ¶¶ 1-7.

[2] See: Petition at ¶ 10(a)(2).

[3] See: Petition at ¶ 10(b)(2).

[4] See: Records of the Court of Common Pleas.

[5] See: Petition at ¶ 12(5).

[6] See: Records of the Court of Common Pleas.

[7] See: Exhibit 10 to the answer of the Commonwealth.

> Did the lower court err when it misstated the record in that the Defendant filed an untimely application for P.C.H.A. and the issues therein had been previously litigated, when it dismissed Defendant's application without a hearing when Defendant pled facts which would have entitled him relief pursuant to 42 Pa.C.S. § 9541 et sec?[8]

On January 6, 2005, the denial of the second post-conviction petition was affirmed as having been untimely sought.[9]

The background to this case can be garnered from the August 28, 1998 memorandum of the Superior Court in which it is noted:

> Appellants, Culver, Franklin and Jackson, as well as co-defendants, Damon Lee and Damon Garnett, were incarcerated at the State Correctional Institution at Pittsburgh ... in November, 1994. During the evening meal on November 5, 1994, Culver and the victim, Ernest Kephart, also an inmate ... got into an argument over a dinner tray. Although no physical fight erupted at that time, the two exchanged words and Culver promised to see Kephart in the yard later. Franklin, Jackson, Lee and Garnett were with Culver at the time of the argument. After dinner, Culver and Kephart met in the yard, and their argument turned physical. Franklin, Jackson, Garnett and Lee encouraged Culver to "beat [Kephart's] ass." ... However, the fight ended shortly after it began.
>
> Kephart and a friend, Elmo Slingerland, met the defendants again behind the weight pavilion, an area of the yard where the guards could not see clearly. This time, both Jackson and Lee punched Kephart, who then fell down. While he was on the ground all of the defendants kicked him in the head, face, legs and upper torso as he lay in a fetal position trying to protect himself. Within a short period of time, the guards were alerted to the fight and intervened; a crowd of 50 to 100 inmates scattered. Kephart was taken to the infirmary and then to a hospital. He later died as a result of the head injuries he sustained in the fight.
>
> Culver, Franklin, Jackson, Lee, and Garnett were all charged with homicide, aggravated assault, and assault by a prisoner. Following a joint jury trial ... Culver, Franklin, and Jackson were convicted of aggravated assault, simple assault, and assault by a prisoner; they were acquitted of the homicide charge.
>
> The petitioner now comes before this Court and contends that he is entitled to habeas

---

[8] See: Exhibit 12 to the answer of the Commonwealth.

[9] See: Exhibit 13 to the answer of the Commonwealth.

corpus relief based upon evidence which was previously unavailable to him and which did not come to his knowledge until January 16, 2005. Specifically, the petitioner contends that Charles Barner who was present at the time of the incident has provided him with an affidavit in which he states that he had reported to prison officials that the petitioner was not present at the crime scene and that the prison officials coerced him into not coming forward with such allegations, and that another inmate, Michael Cooper recently disclosed to him that Cooper knew that the testimony used against the petitioner at trial was a set-up.

In addition, the petitioner contends that Damon Lee the actual perpetrator of the crime who was convicted of involuntary manslaughter but did not testify at the joint trial, has now exonerated the petitioner. This evidence which was available earlier provided the basis for the petitioner's second post-conviction petition.

Finally, he alleges that he was improperly convicted based on evidence from a prison informant, Philip Peletz who admitted he was involved in an attempt to set-up the petitioner for conviction.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the issue regarding Lee's testimony has been presented to the Pennsylvania courts in the second post-conviction petition but petitioner has not presented the Pennsylvania courts with any of the additional grounds upon which he relies here since the newly discovered evidence did not arise until January 2005.

We first consider the petitioner's claim that he is entitled to relief based on the after discovered exculpatory evidence of co-defendant Lee which the petitioner received on November 7, 2003. This matter was raised in the Court of Common Pleas and the Superior Court both of which concluded that it was untimely and lacking in merit. Specifically, the Superior Court concluded:

> Lee was one of Culver's co-defendants at trial, and he was convicted and sentenced for the same crimes as Culver. Lee was not the only eyewitness to the criminal incident; there was testimony at trial regarding Culver's participation in the fight which led to the victim's death ... Moreover, Culver confessed to another inmate [at another institution] . Thus, Culver's proffered "newly-discovered" exculpatory evidence in not of such a nature that a different result would have followed had Lee testified at trial; in fact, Lee's testimony would have served solely to impeach the credibility of the witnesses who testified. Accordingly, as we find the petition is untimely and totally lacking of merit, we affirm the PCRA court's order.[10]

In the present petition, Culver claims he is entitled to relief here based on the Pennsylvania courts "misinterpret[ing] established Pennsylvania Jurisprudence when it dismissed Plaintiff's P.C.R.A .as untimely.[11] In raising this issue, in the second post-conviction

---

[10] See: Exhibit 13 to the answer of the Commonwealth.

[11] See: Petition at ¶ 13.

proceedings, the petitioner relied exclusively on state law. In disposing of this claim, both the trial court and the Superior Court relied on the fact that the claim was untimely raised under Pennsylvania law. As a matter of state law, the issue cannot be raised here. Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir.1997).

The petitioner next contends he is entitled to relief based on the January 18, 2005 affidavit of Charles Barner and the February 6, 2005 affidavit of Michael Cooper. Neither of these affidavits have been presented to the Pennsylvania courts. Pennsylvania makes provisions for presenting newly discovered evidence. 42 Pa.C.S. 9545(b)(2). However, the latter statute requires that any such claims be presented 'within 60 days of the date the claim could have been presented." In the instant case, at the very latest such claim could have been presented by April 7, 2005. This the petitioner has failed to do.

In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because the petitioner has failed to demonstrate any cause for failing to raise the issues in state court in a timely fashion, his claims here are barred.

Finally, the petitioner argues that inmate Philip Peletz was used to set-up the petitioner for conviction. This claim, likewise has never been presented to the courts of the Commonwealth for consideration, and is barred here.

Accordingly, it is recommended that the petition of Henry Culver for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal

claim.

    Within ten (10) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                    Respectfully submitted,

                                                   s/ Robert C. Mitchell

Dated: August 9, 2005                            Robert C. Mitchell,
                                                   United States Magistrate Judge