IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY CULVER, EJ-1493,  )
    Petitioner )
     )
    v. ) Civil Action No. 05-215
     )
FREDERIC ROSEMEYER, et al., )
    Respondents. )

Supplemental Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Henry Culver for a writ of habeas corpus be dismissed and that a certificate of appealability be denied as the petition lacks viable constitutional issues upon which a reasonable jurist could concluded that there is a basis for appeal.

II. Report:

Henry Culver has presented a petition for a writ of habeas corpus. In his petition, Culver seeks to challenge his conviction of aggravated assault, assault by a prisoner and simple assault at No. 199516950 in the Court of Common Pleas of Allegheny County, Pennsylvania. An eight to twenty year sentence was imposed on September 11, 1996.

The instant petition was received on February 18, 2005 . However, because this petition was not the first federal petition in which Culver challenged this conviction, the matter was transferred to the United States Court of Appeals pursuant to 28 U.S.C. 1631 as a second or successive petition. In an Order entered on May 17, 2005, the Court of Appeals determined that

the petitioner had made a *prima facie* demonstration of possible entitlement to relief and remanded the matter for further consideration by this court "including timeliness, exhaustion, procedural default, cause and prejudice, and actual innocence."

On August 29, 2005, the petition was dismissed on procedural grounds, and on May 23, 2006, the Court of Appeals "summarily remanded for ... consideration of whether failure to consider Petitioner's habeas petition on the merits would result in a fundamental miscarriage of justice."[1]

On July 12, 2006, we again recommended that relief be denied and judgment was entered accordingly on August 9, 2006. On appeal, the matter was remanded for an evidentiary hearings as discussed below.

Culver is presently incarcerated serving an eight to twenty year sentence imposed following his conviction, by a jury, of aggravated assault and assault by a prisoner at No. CC 9516950, in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 11, 1996.[2]

An appeal was taken to the Superior Court which affirmed the judgment of sentence on August 28, 1998[3], and leave to appeal was denied by the Pennsylvania Supreme Court on January 6, 1999.[4]

---

[1] See: Docket No. 21.

[2] See: Petition at ¶¶ 1-7.

[3] See: Petition at ¶ 10(a)(2).

[4] See: Petition at ¶ 10(b)(2).

A post-conviction petition was filed in the Court of Common Pleas on August 19, 1999.[5] That petition was dismissed on October 24, 2000.[6] An appeal was taken to the Superior Court, and the denial of post-conviction relief was affirmed on December 28, 2001, and a petition for allowance of appeal to the Pennsylvania Supreme Court was not filed.[7]

Culver subsequently filed a second post-conviction petition which was dismissed on November 25, 2003.[8] An appeal was taken to the Superior Court in which the issues presented were:

> Did the lower court err when it misstated the record in that the Defendant filed an untimely application for P.C.H.A. and the issues therein had been previously litigated, when it dismissed Defendant's application without a hearing when Defendant pled facts which would have entitled him relief pursuant to 42 Pa.C.S. § 9541 et sec?[9]

On January 6, 2005, the denial of the second post-conviction petition was affirmed as having been untimely filed.[10] The instant petition was received on February 18, 2005.

The background to this case can be garnered from the August 28, 1998 Memorandum of the Superior Court in which it is noted:

> Appellants, Culver, Franklin and Jackson, as well as co-defendants, Damon Lee and Damon Garnett, were incarcerated at the State Correctional Institution at Pittsburgh ... in November, 1994. During the evening meal on November 5, 1994,

---

[5] See: Records of the Court of Common Pleas.

[6] See: Petition at ¶ 12(5).

[7] See: Records of the Court of Common Pleas.

[8] See: Exhibit 10 to the answer of the Commonwealth.

[9] See: Exhibit 12 to the answer of the Commonwealth.

[10] See: Exhibit 13 to the answer of the Commonwealth.

3

> Culver and the victim, Ernest Kephart, also an inmate ... got into an argument over a dinner tray. Although no physical fight erupted at that time, the two exchanged words and Culver promised to see Kephart in the yard later. Franklin, Jackson, Lee and Garnett were with Culver at the time of the argument. After dinner, Culver and Kephart met in the yard, and their argument turned physical. Franklin, Jackson, Garnett and Lee encouraged Culver to "beat [Kephart's] ass." ... However, the fight ended shortly after it began.
>
> Kephart and a friend, Elmo Slingerland, met the defendants again behind the weight pavilion, an area of the yard where the guards could not see clearly. This time, both Jackson and Lee punched Kephart, who then fell down. While he was on the ground all of the defendants kicked him in the head, face, legs and upper torso as he lay in a fetal position trying to protect himself. Within a short period of time, the guards were alerted to the fight and intervened; a crowd of 50 to 100 inmates scattered. Kephart was taken to the infirmary and then to a hospital. He later died as a result of the head injuries he sustained in the fight.
>
> Culver, Franklin, Jackson, Lee, and Garnett were all charged with homicide, aggravated assault, and assault by a prisoner. Following a joint jury trial ... Culver, Franklin, and Jackson were convicted of aggravated assault, simple assault, and assault by a prisoner; they were acquitted of the homicide charge.

The petitioner now comes before this Court and contends that he is entitled to habeas corpus relief based upon evidence which was previously unavailable to him and which did not come to his knowledge until January 16, 2005. Specifically, the petitioner contends that Charles Barner who was present at the time of the incident has provided him with an affidavit in which he states that he had reported to prison officials that the petitioner was not present at the crime scene and that the prison officials coerced him into not coming forward with such allegations, and that another inmate, Michael Cooper recently disclosed to him that Cooper knew that the testimony used against the petitioner at trial was a set-up.

In addition, the petitioner contends that Damon Lee the actual perpetrator of the crime who was convicted of involuntary manslaughter but did not testify at the joint trial, has now exonerated the petitioner.

4

Finally, he alleges that he was improperly convicted based on evidence from a prison informant, Philip Peletz who admitted he was involved in an attempt to set-up the petitioner for conviction.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the issue regarding Lee's testimony has been presented to the Pennsylvania courts in the second post-conviction petition but petitioner has not presented the Pennsylvania courts with any of the additional evidence upon which he relies here since he contends that the newly discovered evidence did not arise until January 2005.

In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court

6

pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

In order to demonstrate that a miscarriage of justice has occurred, the petitioner must demonstrate strong probability that had the new evidence been produced at trial, no reasonable juror could have found him guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298 (1995). That is,

> a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense...

Dretke v. Haley, 541 U.S. 386 (2004). Since the "evidence" was not previously available to the petitioner, he must demonstrate that he is "actually innocent of the underlying offense."

The petitioner contends that Charles Barner who was present during the incident has provided an affidavit in which he states that he was coerced by Captain Moore from testifying that the petitioner was not present at the scene of the crime.[11] However, Barner also represented that prior to trial he had informed other inmates that he would testify on petitioner's behalf, but nowhere does he represent that he was contacted by anyone to testify on the petitioner's behalf.[12]

The petitioner has also submitted the affidavit of co-defendant Lee which was executed

---

[11] See: Barner affidavit appended to the petition.

[12] Of note is that at trial, the parties were notified that Capt. Moore would not be testifying due to his demise. (TT.3-4).

on November 7, 2003[13] in which Lee proports to assume responsibility for the crime and exonerates the petitioner and is introduced to contradict the trial testimony which demonstrated petitioner's involvement in the crime.[14] The credibility of this affidavit prepared seven years after trial is fundamentally suspect when offered by a co-defendant who was also convicted of the crime and because he is serving a life sentence cannot be sanctioned for his present alleged admission of guilt.

In reviewing this same issue, the Pennsylvania Superior Court likewise concluded:

Lee was one of Culver's co-defendants at trial, and he was convicted and sentenced for the same crimes as Culver. Lee was not the only eyewitness to the criminal incident; there was testimony at trial regarding Culver's participation in the fight which led to the victim's death ... Moreover, Culver confessed to another inmate [at another institution] . Thus, Culver's proffered "newly-discovered" exculpatory evidence in not of such a nature that a different result would have followed had Lee testified at trial; in fact, Lee's testimony would have served solely to impeach the credibility of the witnesses who testified. Accordingly, as we find the petition is untimely and totally lacking of merit, we affirm the PCRA court's order.[15]

The petitioner has also submitted the affidavit of inmate Michael Cooper[16] in which he states that he was incarcerated at State Correctional Institution at Graterford in July 1995 at which time inmate Philip Peletz enlisted his assistance in gathering information against the petitioner which would place Peletz in a position where he could be rewarded by an institutional transfer. However, the respondents also have supplied information that Cooper did not enter the

---

[13] See: Lee affidavit appended to the petition.

[14] See: Exhibit 13 to the answer of the Commonwealth.

[15] See: Exhibit 13 to the answer of the Commonwealth.

[16] See: Cooper affidavit appended to the petition.

8

Graterford facility until nine months later in April 1996.[17]

On July 12, 2006 we recommended that the petition be dismissed and that a certificate of appealability be denied. That recommendation was adopted by the district judge and judgment was entered against the petitioner on August 9, 2006.

An appeal was taken to the United States Court of Appeals for the Third Circuit which Court summarily remanded the matter on March 7, 2007 holding that:

> Appellant contends that he presented new evidence of his actual innocence in the form of three affidavits. Inmate Barner, an eyewitness, swears that Appellant was not at the scene when the decedent was assaulted. Inmate Cooper swears that inmate Peletz recanted his testimony that Appellant confessed to him in July 1995. Appellant's co-defendant, Lee, swears that Appellant did not assault the decedent... *Because there is no evidence on this record resolving the reliability of affidavits, the District court should have granted the request for an evidentiary hearing.*"[18]

Accordingly, the matter was set for an evidentiary hearing on April 10, 2007 and continued at the request of petitioner's counsel to June 7, 2007, and again continued on May 15, 2007 to September 10, 2007.

The first witness to testify was Charles Barner a former inmate and one of the affiants about whom the Court of Appeals expressed concern. He testified that he knew the petitioner by sight and also knew the victim; that the assault occurred between five and six p.m. and involved two white inmates and three black inmates; that the victim was punched in the head by a black man; that the petitioner was not one of the three black men involved in the incident; that he told prison officials that the petitioner was not involved; that he learned of the petitioner's conviction

---

[17] See: Exhibit 14 to the answer of the Commonwealth.

[18] See Docket No. 32 (emphasis added). We also observe that other than Barner, the petitioner did not call Cooper, Peletz or Lee to testify on his behalf.

when he encountered him at another institution in 2004 and that he was not willing to testify in the petitioner's behalf at the time of the incident since he feared being retaliated against by prison authorities. Having heard the witness and having had a chance to observe his demeanor, and finding his testimony consistent with his affidavit, we find him to be credible.

The next witness to testify was Jose Feliciano who was not one of the affiants upon whom the Court of Appeals based its remand. He testified that he knew the petitioner and that the petitioner was not near the area in which the assault occurred and that he was not involved in the assault. However, his recollection of the incident is somewhat questionable. He testified that he observed a black man hit a white man and that was the end of the event. He did not observe several individuals involved in the vicious assault, but merely one punch. Feliciano also testified that he did sign a statement saying that the petitioner was in the area but he did not see him involved in the fight. At the criminal trial, he refused to testify although he specifically acknowledged to the trial court that he had not been threatened regarding testifying ((TT.631). His testimony here lacks credibility in that unlike the trial testimony and the testimony of Barner, he only observed the brief one on one confrontation and not the fatal second assault.

The next witness called to testify was Emmet Reese, whose affidavit was not before the Court of Appeals, and who refused to offer any testimony other than to relate that he did not know anything about the incident.

The petitioner then called Robin Jackson, his habeas counsel's investigator to testify that Reese had stated to him that he knew about the incident. The respondents' objection to this testimony was sustained.

The next witness to testify was petitioner's co-defendant Kenneth Jackson who testified

10

that he observed the petitioner involved in a very brief altercation with a white inmate who he later learned was Kephart; that someone yelled that the guards were coming and the fight broke-up. Jackson also testified that he, Jackson, was approached by inmate Slingerland which resulted in a fight. Again when warned that the guards were approaching, that fight dispersed. Another fight then broke out between inmate Lee and Kephart; that the guards approached, helped Kephart stand-up; that Kephart walked out of the prison yard and that he never observed anyone kicking Kephart.

Jackson also testified that he never saw the petitioner involved in the second fight with Kephart; that like the petitioner he was convicted of the assault on Kephart and that the testimony he was currently presenting mirrored his trial testimony which obviously was rejected by the jury.

The final witness was the petitioner himself. He too testified that he was involved in the initial altercation with Kephart which dispersed when the guards approached; that he knew of another incident involving Kephart but was unaware of who was present and that he was not involved in it. He further testified that prison officials sought to coerce him into testifying against other inmates but that he refused to do so, and that he did not testify at trial.

The sole issue presented at this time is whether or not a constitutional violation has occurred resulting in the *probable* conviction of an individual who is actually innocent. Schlup v. Delo, 513 U.S. 298 (1995). This standard is applied to a "narrow class of cases ... implicating a fundamental miscarriage of justice" Id. at 315 (citation omitted). That is, "if a petitioner ... presents evidence of his innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error" then the merits of the underlying claim should be addressed. Id. at 316. The Court

summarized its holding that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup at 329. Such rigorous standards only apply in an "extraordinary" situation. House v. Bell, 126 S.Ct.2064, 2077 (2006).

Thus, after hearing the evidence here, the only matter of some concern, is the testimony of Charles Barner and whether this evidence warrants an examination of the merits of the petition. However, at the hearing Barner testified that he was unwilling to testify on petitioner's behalf at trial, and we conclude that even if he had testified, his testimony would have been cumulative of that presented by witnesses Zealous (TT. 445) , Evans (TT.638-639, 641) and Jackson (TT.656-661). The evidence of the latter witnesses seeking to exonerate the petitioner was heard by the jury and clearly rejected in light of the inculpatory evidence presented. Accordingly, this evidence does not rise to the very narrow extraordinary finding casting doubt on the validity of the petitioner's convictions.[19]

Because following an evidentiary hearing, there is no basis upon which one could conclude that had the additional evidence been presented to a jury, any reasonable juror could have determined guilty beyond a reasonable doubt, and that there is no showing made here of actual innocence, the merits of the issues which the petitioner seeks to raise here need not be addressed. Accordingly, it is recommended that the petition of Henry Culver for a writ of habeas corpus be dismissed, and that because the petition lacks viable constitutional issues upon which a

---

[19] The Commonwealth in its brief argues that Barner had told other inmates that he would testify at trial in the petitioner's behalf. Even if true, his testimony here contradicts this allegation, and if indeed he made such statements his identity as a potential defense witness could have been discovered through the exercise of due diligence. 28 U.S.C. 2244(b)(2)(B)(i).

reasonable jurist could concluded that there is a basis for appeal, that a certificate of appealability be denied.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: December 5, 2007	United States Magistrate Judge